UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DOCUMENT SECURITY SYSTEMS,
INC. et al.,

Plaintiffs,

v.

JEFFREY RONALDI,

Defendant.

DECISION AND ORDER

20-CV-6265-EAW-MJP

**Pedersen, M.J.** Before the Court are defendant Jeffrey Ronaldi's ("Defendant") applications for fees and costs. ("Applications I & II," ECF Nos. 23 & 43.) In sum, there are two issues before the Court that fall under determining "reasonable" fees under New York Business Corporation Law ("BCL") § 724(c): first, the Court must determine the appropriate calculation of fees for Applications I & II. (ECF Nos. 23 & 43); and second, the Court must determine whether Plaintiffs forfeited any objection to Applications I and II based on *Baker v. Health Mgmt. Sys., Inc.*, 98 N.Y.2d 80 (2002). For the reasons discussed below, the Court will award a portion of Defendant's requested fees and expenses.

## PROCEDURAL HISTORY

### *The Court's Prior D. & O. and The First Advancement Application*

The Court will assume the parties' familiarity with its prior decisions and the procedural history. (D. & O. at 1–3, Mar. 16, 2021, ECF No. 22.) The Court ordered Plaintiffs to "pay all reasonable fees and expenses incurred by Ronaldi in defending this action within thirty days of receipt of a request from Ronaldi." (*Id.* at 1, 11–12.) The Court also directed that within ten days of its D. & O. that Defendant's

> [C]ounsel shall provide an affidavit . . . describing all fees and expenses
> incurred as of the date of such affidavit, along with corresponding
> invoices, such that the Court may enter an Order directing the amount
> of advancement that Plaintiffs shall pay.

(*Id.* at 11.) Defendant's counsel did so. (Application I,[1] ECF No. 23.)

Defendant requested $160,896.25. (*Id.* ¶ 10.) Application I covers March through June of 2020. (*Id.* ¶¶ 11–16.) On April 2, 2021, Plaintiffs filed an objection to Application I. (Objection I, ECF No. 25.) Plaintiffs asserted that the Court should apply the Second Circuit's forum rule to prevent Defendant's counsel from charging excessive rates for the Western District. (*Id.* at 1–5.) Plaintiffs also asserted that Defendant's counsel was performing unnecessary work. (*Id.* at 5–6.)

Defendant responded on the same date in a letter. (ECF No. 26.) Defendant noted that, without advancement of the full amount of attorney's fees, Defendant will be personally saddled "with the bulk of his reasonable expenses, in contravention of the BCL, which is intended to protect corporate officers from strike suits of this nature." (*Id.* at 2.) Defendant also argued that the forum rule is inapplicable. (*Id.* at 1.) Plaintiffs filed a letter surreply on April 5, 2021, citing the language of the Court's prior D. & O. concerning "reasonable" attorney's fees incurred in defending this action. ("Surreply," ECF No. 27.) Plaintiffs also pointed out that even if the Second Circuit's forum rule were not applicable, the Court should consider New York Rule of Professional Conduct 1.5(a)[2] (*id.* at 2), which details factors for determining payment

---

[1] Application I consists of the declaration of Ryan M. Philp, Esq., (ECF No. 23), Mr. Philp's biography, (Application I Ex. A, ECF No. 23-1), and several additional exhibits consisting of time entries. (Application I Ex. B, C, D, E, F, and G, ECF Nos. 23-2–23-7.)

[2] Located in 20 N.Y. COMP. CODES R. & REGS. tit. 20, § 1200.

of reasonable fees, including "the fee customarily charged in the locality for similar legal services." N.Y. R. of Pro. Conduct r. 1.5(a)(3).

### Defendant's Second Advancement Application

On November 12, 2021, Defendant's counsel filed a second advancement application. (Application II,[3] ECF No. 43.) Defendant requested "an additional $121,672.51." (*Id.* ¶ 9.) Application II covers April through August 2021. (*Id.* ¶¶ 10–14.)

Plaintiffs again objected. (Objection II, ECF No. 47.) Plaintiff noted Defendant's use of local counsel in the parallel state court matter. (*Id.* at 1, 4.) Otherwise, Plaintiffs repeated essentially the same arguments about Defendant's counsel's hourly rates, hours billed, and applicability of the Second Circuit's forum rule. (*See generally id.*)

Defendant replied, providing additional argument about the inapplicability of the forum rule. (Reply II at 3–6, ECF No. 48.) Defendant also asserted his right to choose counsel, noting that his "retention of the qualified lawyers of which choosing to defend these serious reputational allegations clearly is justified." (*Id.* at 6.) Defendant also requested entry of an order to facilitate future advancements. (*Id.* at 9–10.) On the same day, Defendant's counsel filed a supplemental declaration providing discussion of fees and sample orders for future advancement of fees from

---

[3] Application II consists of a letter seeking leave of Court to file Application II, (ECF No. 43), the declaration of Mr. Philp, (ECF No. 43-1), and exhibits detailing relevant time entries. (Application II Exs. A, B, C, D, E, ECF No. 43-1.)

the Delaware Court of Chancery. (*See generally* "Def.'s Suppl. Decl.," Dec. 20, 2021, ECF No. 49.)

### The Current Pending Motions

Defendant made Applications I & II based on the Court's decision and order ("D. & O.") granting Defendant advancement of reasonable costs and fees pursuant to New York Business Corporation Law section 724(c).[4] (ECF No. 22.) Defendants objected to both Applications I & II. ("Objections I & II," ECF Nos. 25 & 47.) Plaintiff filed responses[5] to Defendants' objections. ("Replies I & II," ECF Nos. 26 & 48.) After oral argument on February 9, 2022, Plaintiffs and then Defendant provided letter briefing respectively dated February 10, 2022, and February 15, 2022[6] (on file with the Court).

Based on those letters, the Court requested additional briefing, according to the briefing schedule set forth in Loc. R. Civ. P. 7. (Text Order, Mar. 24, 2022, ECF No. 55.) Defendant and then Plaintiffs submitted memoranda of law on issues presented by *Baker v. Health Mgmt. Sys., Inc.*, 98 N.Y.2d 80 (2002) (*Baker II*), on April 4 and April 18, 2022, respectively. (ECF Nos. 56 & 57.) Pursuant to Loc. R. Civ.

---

[4] Hereinafter, "BCL § 724(c)." The statute reads:

Where indemnification is sought by judicial action, the court may allow a person such reasonable expenses, including attorney's fees, during the pendency of the litigation as are necessary in connection with his defense therein, if the court shall find that the defendant has by his pleadings or during the course of the litigation raised genuine issues of fact or law.

BCL § 724(c).

[5] The Court briefly notes that there were informal surreplies to both Applications.

[6] The parties did not enter these letters on CM/ECF.

P. 7, as the party requesting attorney's fees, the Court permitted Defendant to file a reply. (Apr. 25, 2022, ECF No. 62.)

The Court also requested briefing on whether Plaintiffs forfeited[7] any fees-on-fees objection to Defendant's advancement application stemming from the *Baker II* case. (Text Order, Apr. 18, 2022, ECF No. 58.) Defendant referred to forfeiture in passing in the informal letter briefing following the above-referenced oral argument. (Feb. 15, 2022, on file with the Court.) Defendant submitted his initial memorandum of law on April 25, 2022. (ECF No. 61.) Plaintiffs filed opposition on May 2, 2022. (ECF No. 63.) Defendant filed a reply on May 6, 2022. (ECF No. 65.)

### The Parties' Oral Argument and Supplemental Briefing

On February 9, 2022, the Court held oral argument. (Minute Entry, ECF No. 53.) Counsel for both parties appeared and argued concerning applicability of the Second Circuit's forum rule. (*Id.*) One day after oral argument, Plaintiffs submitted a letter to the Court ostensibly to draw attention to applicable case law.[8] (Pls.' Letter, on file with the Court.) Plaintiffs attached the New York Court of Appeals' decision in *Baker II*. Plaintiffs framed *Baker II* as controlling precedent. (Letter at 2, on file with the Court ("The Court of Appeals … determine[ed] that a corporate officer, or former officer, such as Mr. Ronaldi, is not entitled to recover attorneys' fees in

---

[7] "A waived claim or defense is one that a party has knowingly and intelligently relinquished; a forfeited plea is one that a party has merely failed to preserve." *Wood v. Milyard*, 566 U.S. 463, 471 n.4 (2012) (citation omitted). While courts use the words interchangeably, and the Court used "waiver" in its text order, (ECF No. 58), the correct term is "forfeiture." *See Kontrick v. Ryan*, 540 U.S. 443, 458 n.13 (2004) (quoting *United States v. Olano*, 507 U. S. 725, 733 (1993)) ("Although jurists often use the words interchangeably, 'forfeiture is the failure to make the timely assertion of a right [while] waiver is the intentional relinquishment or abandonment of a known right.'") (alteration added).

[8] *See supra*, note 3.

5

connection with an application for advancement or indemnification") (alteration added).)

Defendant responded in a letter dated February 15, 2022, arguing that *Baker II* is inapplicable. (Def.'s Letter at 2–3, on file with the Court.) Defendant stated in the letter that "DSS's letter, filed without leave of Court, cites two additional cases that were not cited in its multiple prior submissions." (*Id.* at 1.) Concerning *Baker*, Defendant stated, "DSS also points to *Baker [II]* ... to argue *for the first time* that the Court should not award 'fees incurred by a corporate officer in making an application for fees before a court.'" (*Id.* at 2 (quoting Pls.' Letter, Feb. 9, 2022, on file with the Court) (alterations added) (emphasis in original).) Defendant added, "[p]utting aside that DSS never raised this argument in prior briefing," before proceeding to make a substantive argument about *Baker II*. (*Id.* (alteration added).)

Based on Defendant's February 15, 2022, letter and a footnote Defendant included in his initial memorandum of law on *Baker II*, the Court requested further briefing from the parties concerning whether Plaintiffs forfeited their arguments based upon *Baker II* (Text Order, Apr. 18, 2022, ECF No. 58). (Def.'s Mem. of Law on *Baker II* at 12 n.2, ECF No. 56.) Defendant filed his initial memorandum of law on forfeiture on April 25, 2022. (Def.'s Mem. of Law on Forfeiture, ECF No. 61.) Plaintiffs filed opposition on May 2, 2022. (Pls.' Mem. of Law on Forfeiture, ECF No. 63.) Defendant filed a reply on May 6, 2022. (ECF No. 65.)

## DISCUSSION OF CALCULATING ATTORNEYS' FEES

### *Applicable Law*

As a threshold matter, the Court must determine whether New York or federal law governs. The parties' briefings focus almost exclusively on federal law and the applicability of the Second Circuit's forum rule. However, questions of whether to award attorney's fees in diversity actions, such as this one, fall soundly within state law. *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 177 (2d Cir. 2005); *see also Allstate Ins. Co. v. Serio*, 261 F.3d 143, 150 (2d Cir. 2001) ("Where a decision is to be made on the basis of state law … the Supreme Court has long shown a strong preference that the controlling interpretation of the relevant statute be given by state, rather than federal, courts."). Having decided whether to advance fees under state law (*see generally* D. & O., ECF No. 22), it follows that the Court would also calculate fees under state law. MOORE'S FEDERAL PRACTICE § 124.07[3][b] ("When state law controls, state law governs not only the right to fees but also the method of calculating the fees."); *see also Crout v. Haverfield Int'l, Inc.*, 348 F. Supp. 3d 219, 227–28, 233 (W.D.N.Y. 2018) (applying New York law in a diversity action to calculate fees based on *quantum meruit*).

The Second Circuit endorsed the use of state law to calculate attorneys' fees in diversity actions in *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47 (2d Cir. 1992). The Court "perceive[d] no abuse of discretion" where the district court "took into account the factors ordinarily considered by New York courts when evaluating requests for attorney's fees." *Id.* at 53 (citing New York State case law) (alteration added). This accords with sister circuit precedent. *See Chieftan Royalty Co. v.*

*Energest Energy Institutional Fund XII-A, L.P.*, 888 F.3d 455, 461–62 (10th Cir. 2017) (collecting cases, including *Riordan*, 977 F.3d at 53); *accord Close v. Sotheby's Inc.*, 909 F.3d 1204, 1208 (9th Cir. 2018) ("Because this is a diversity case, state law governs both 'the right to fees' and 'the method of calculating the fees.'" (quoting *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995))).

The lodestar method remains persuasive, however, because New York courts frequently use it to calculate attorney's fees. *See, e.g.*, *Matakov v. Kel-Tech Const., Inc.*, 84 A.D.3d 677, 678 (N.Y. App. Div. 1st Dep't 2011) (citing cases) ("The court properly applied the lodestar method to calculate plaintiffs' class counsel's fee rather than the percentage method."); *Lenaar v. Lubavitch*, 64 Misc. 3d 1238(A), 118 N.Y.S.3d 371, 2019 WL 4282234, at *14 (N.Y. Civ. Ct. 2019) ("This court will rely on the [Second] Circuit Court in the Eastern District and other decisions of the Appellate Division Second Department which adopts those same guidelines for the prevailing market rate for attorney's fees based on the number of years of experience.") (alteration added); *Francis v. Atl. Infiniti, Ltd.*, 34 Misc. 3d 1221(A), 950 N.Y.S.2d 608, 2012 WL 398769, at *4 (Sup. Ct. 2012) (citing relevant Second Circuit case law); *Nestor v. Britt*, 23 Misc. 3d 1138(A), 889 N.Y.S.2d 506, 2009 WL 1636913, at *1 (N.Y. Civ. Ct. 2009) ("This court exercises its discretion by using the lodestar method."). New York and federal courts overlap substantially in the factors they use to adjust the lodestar method and proposed attorney's fees generally. *Compare Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 186 n.3 (2d Cir. 2008) (quoting *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)) *with Lancer Indem. Co. v. JKH*

*Realty Grp., LLC*, 127 A.D.3d 1035, 1036 (N.Y. App. Div. 2d Dep't 2015) (quoting *Diaz v. Audi of Am., Inc.*, 57 A.D.3d 828, 830 (N.Y. App. Div. 2d Dep't 2008)); *see also 515 Ave. I Corp. v. 515 Ave. I Tenants Corp.*, 29 Misc. 3d 1228(A), 920 N.Y.S.2d 240, 2010 WL 4904671, at *3 (N.Y. Sup. Ct. 2010) (noting that the factors considered are similar).

Thus, the Court will use the lodestar method as a first step before adjusting it based on the factors New York courts consider. The Court will note where New York and federal law diverge. *Cf. 515 Ave. I Corp. v. 515 Ave. I Tenants Corp.*, 2010 WL 4904671 *3 (indicating that adopting the lodestar method wholesale into fee-shifting cases from civil rights litigation may pose a "danger").

### *Legal Standard under New York Law*

As discussed, New York and federal courts consider a set of factors "relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008); *accord Vigo v. 501 Second St. Holding Corp.*, 121 A.D.3d 778, 780 (N.Y. App. Div. 2d Dep't 2014) (noting several factors including "the fee customarily charged in the locality"). The "starting point," however, is a calculation of the "lodestar" figure. *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("While the lodestar is not always conclusive, its presumptive reasonability means that, absent extraordinary circumstances, failing to calculate it as a starting point is legal error."). It is the starting point because "the Supreme Court's directive that fee award calculations be 'objective and reviewable,' implies [that] the district court should at least provide the number of hours and hourly rate it used to produce the

lodestar figure." *Id.* at 166–67 (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 555 (2010)) (alteration added). It is not an abuse of discretion for New York courts to follow the same framework. *See, e.g., Matakov*, 84 A.D.3d at 678 (discussed *supra*); *RMP Cap. Corp*, 139 A.D.3d at 840 ("The court properly applied the lodestar method.").

Courts calculate the "lodestar" figure by "multiply[ing] 'the number of hours reasonably expended' by a 'reasonable hourly rate.'" *Schneider on behalf of A.T. v. City of Buffalo*, No. 18-CV-1431V(SR), 2021 WL 5042502, at *3 (W.D.N.Y. Oct. 29, 2021) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)) (alteration added); *accord 76th St. Owners' Corp. v. Elshiekh*, 29 Misc. 3d 1225(A), 918 N.Y.S.2d 400, 2010 WL 4721617, at *2 (N.Y. Civ. Ct. 2010) (citing *Hensley*, 461 U.S. at 433). Once calculated, there is a "strong presumption" that the lodestar figure is reasonable, but this presumption "may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Ceglia v. Zuckerberg*, No. 10-CV-00569A F, 2012 WL 503810, at *4 n.6 (W.D.N.Y. Feb. 14, 2012) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010)); *see also McPhaul v. Insight Mgmt. Partners*, No. 1:19-CV-1392, 2022 WL 542534, at *2 (W.D.N.Y. Feb. 23, 2022) ("Generally, the 'lodestar' creates a presumptively reasonable fee, guided by the *Arbor Hill* factors.")

Here, the Court will consider applicable factors under New York case law[9] to determine if the lodestar method has produced a reasonable fee. Use of these factors, and use of the lodestar method, are a "determination ... left to the sound discretion of the trial court. *RMP Cap. Corp. v. Victory Jet, LLC*, 139 A.D.3d 836, 839–40 (N.Y. App. Div. 2d Dep't 2016); *accord Cush-Crawford v. Adchem Corp.*, 94 F. Supp. 2d 294, 301 (E.D.N.Y. 2000), *aff'd*, 271 F.3d 352 (2d Cir. 2001) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998) (Given "the district court's familiarity with the quality of representation and the extent of the litigation, the decision whether to award fees and the amount of fees awarded are issues generally confined to the sound discretion of the court.").

## *Documentation*

New York and federal courts alike generally consider documentation when analyzing reasonable hours billed. *See, e.g., Martinez v. City of New York*, 330 F.R.D. 60, 71–72 (E.D.N.Y. 2019); *Godson v. Eltman, Eltman & Cooper, P.C.*, 328 F.R.D. 35, 62–63 (W.D.N.Y. 2018); *accord Matakov*, 84 A.D.3d at 678 (remanding for counsel to provide evidence of background, training, and skill given that the "number of hours

---

[9] These factors are:

[1] [The] time and labor required, [2] the difficulty of the questions involved, [3] and the skill required to handle the problems presented; [4] the lawyer's experience, ability and reputation; [5] the amount involved and benefit resulting to the client from the services; [6] the customary fee charged by the Bar for similar services; [7] the contingency or certainty of compensation; [8] the results obtained; [9] and the responsibility involved.

*In re Freeman's Est.*, 34 N.Y.2d 1, 9 (1974) (alterations added). Of note, rather than tying the customary rate to the community, the *Arbor Hill* factors include the "the attorney's customary hourly rate." 522 F.3d at 186 n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

expended was apparently excessive"). The Court will discuss documentation separately, however, because New York courts do not necessarily require "contemporaneous time records" in the same way that federal courts do. *See Riordan*, 977 F.2d at 53 ("New York courts have specifically rejected the 'hard and fast rule that reconstructed time records can never serve as a basis for compensation' in favor of wider trial court discretion in evaluating fee petitions." (quoting *Matter of Karp*, 145 A.D.2d 208, 216 (N.Y. App. Div. 1st Dep't 1989))).

Instead, New York courts simply require "sufficient information upon which to determine the reasonable value of the legal services rendered." *NYCTL 1996-1 Trust v. Stavrinos Realty Corp.*, 113 A.D.3d 602, 604 (N.Y. App. Div. 2d Dep't 2014). "In this regard, there 'must be a sufficient affidavit of services, detailing 'the hours reasonably expended … and the prevailing hourly rate for similar legal work in the community.'" *Id.* (quoting *SO/Bluestar, LLC*, 33 A.D.3d at 988). On appeal, New York's Appellate Divisions consider whether counsel "establish[ed] through competent evidence that [their] fees were consistent with customary fee[s] charged for similar services by lawyers in the community with like experience and of comparable reputation." *Matakov*, 84 A.D.3d at 678 (quoting *Friedman v. Miale*, 69 A.D.3d 789, 791 (N.Y. App. Div. 2d Dep't 2020)) (alterations added).

The Court finds that Defendant's counsel have not established their fees accord with the prevailing hourly rate for the relevant legal community. Defendant's counsel's fees may be the prevailing rate for New York City, but as the Court will discuss in setting the reasonable hourly rate, the relevant analysis under New York

law is from the perspective of the legal community in which the Court sits, that being the Western District of New York.[10]

Defendant otherwise provided ample documentation. Both Applications I & II contain time entries that are "contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Schneider*, 2021 WL 5042502, at *3 (quoting *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)). Defendant's counsel "submitted detailed bills and documented the expenses incurred in litigating every possible aspect of this matter." *Sears v. First Pioneer Farm Credit, ACA*, 46 A.D.3d 1282, 1287 (N.Y. App. Div. 3d Dep't 2007). However, further analysis, as the *Sears* case notes, is required. *See id.* ("Some analysis of those figures and consideration of whether the sum sought indeed is reasonable must occur prior to making any award."). The Court will consider Plaintiffs' disputes with Defendant's detailed billing statements in discussing the reasonable hours expended. *See Red Apple Supermarkets, Inc. v. Malone & Hyde, Inc.*, 259 A.D.2d, 357, 357 (N.Y. App. Div. 1st Dep't 1999) ("Presented with such facially valid support for the fee request, it was incumbent upon plaintiffs to point out all instances of irregularity or dispute, not just a few examples.").

### *Reasonable Hourly Rate*

The Court discussed calculating a reasonable hourly rate under the lodestar method in *Godson v. Eltman, Eltman, & Cooper, P.C.*: "A reasonable hourly rate is

---

[10] Using the Court's forum is not a stringent rule: but as the Court will discuss, Defendant provides no reason for the Court to depart from New York's laws and federal law's preference for analyzing prevailing market rates from the perspective of the community in which the Court sits.

the rate a paying client would be willing to pay bearing in mind that a reasonable

paying client wishes to spend the minimum necessary to litigate the case effectively."

328 F.R.D. at 61 (quoting *Arbor Hill*, 522 F.3d at 190).[11] The Court continued: "To

determine reasonable hourly rates, the Court considers this Circuit's adherence to

the forum rule, which states that a district court should generally use the prevailing

hourly rates in the district where it sits." *Id.* (citation omitted). When calculating in-

district rates under the forum rule,

> [D]etermination of a reasonable hourly rate "contemplates a case-
> specific inquiry into the prevailing market rates for counsel of similar
> experience and skill to the fee applicant's counsel," an inquiry that may
> "include judicial notice of the rates awarded in prior cases and the
> court's own familiarity with the rates prevailing in the district."

*Townsend v. Benjamin Enters, Inc.*, 679 F.3d 41, 59 (2d Cir. 2012) (quoting *Farbotko*

*v. Clinton Cty.*, 433 F.3d 204, 209 (2d Cir. 2005)) (alteration added). Such market

rates "should be current rather than historic hourly rates." *Reiter v. MTA N.Y.C.*

*Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006) (cleaned up).

At the outset, the Court must consider Defendant's contention that much of

New York and federal case law about attorney's fees is inapposite because it deals

---

[11] This alone warrants caution: where there is fee-shifting available, *Arbor Hill*
instructs courts to step "into the shoes of the reasonable, *paying* client, who wishes to pay the
least amount necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 184 (emphasis
added). New York courts indicate a similar principle. *See Diaz*, 57 A.D.3d at 830 ("[A]
reasonable attorney's fee is commonly understood to be a fee which represents the reasonable
value of the services rendered."). As noted in *Arbor Hill*, "A plaintiff bringing suit under the
Voting Rights Act, pursuant to which fees can be recovered from the other side, has little
incentive to negotiate a rate structure with his attorney prior to the litigation; the district
court must act later to ensure that the attorney does not recoup fees that the market would
not otherwise bear." *Id.* at 184. The same applies here to a limited extent in that Defendant
will only be liable for payment of fees if he is not successful in the case.

with fee-shifting rather than indemnification. (Reply I at 1, ECF No. 26 (arguing that the forum rule is inapplicable because "the Court has ordered advancement" rather than "fee shifting").) Plaintiffs respond that although BCL § 724(c) is an indemnification provision, "[i]t does not say that a party may be indemnified for unreasonable attorneys' fees." (Letter, Apr. 5, 2021, ECF No. 27 (citation omitted).) New York case law indicates that New York courts will not award "excessive or unreasonable" fees in cases involving advancement. *Feldmeier v. Feldmeier Eqip., Inc.*, 164 A.D.3d 1093, 1101 (N.Y. App. Div. 4th Dep't 2018) (remanding for trial court to determine "reasonable attorneys' fees" to be advanced to plaintiff); *TMR Bayhead Sec., LLC v. Aegis Texas Venture Fund II, LP*, 111 A.D.3d 508, 508 (N.Y. App. Div. 1st Dep't 2013) ("The motion court properly granted Roberts' request for advancement of fees. Contrary to the fund entities' contentions, the requested fees were not excessive or unreasonable."); *see also Ficus Invs., Inc. v. Priv. Cap. Mgmt., LLC*, 63 A.D.3d 611, 611 (N.Y. App. Div. 1st Dep't 2009) (affirming finding that fees to be advanced were reasonable); *Schlossberg v. Schwartz*, 43 Misc. 3d 1224(A), 992 N.Y.S.2d 161, 2014 WL 1976650, at *11 (N.Y. Sup. Ct. 2014) (finding "the expenses sought to be advanced" were "reasonable and supported by substantial documentation").

The Court finds that Defendant's reading of BCL § 724(c) would remove the word "reasonable" from the statute, a result the New York legislature would not intend, and the Court of Appeals would shun. *See* BCL § 724(c) (Defendant is entitled only to advancement of "such reasonable expenses, including attorney's fees … as are necessary in connection with his defense."). The Court of Appeals eschewed a similar

result in *Baker II* while discussing BCL § 722(a), rejecting a corporate officer's argument that the BCL is "a remedial statute with the purpose of shifting all costs and personal liability away from the corporate official ... and, thus, should be construed expansively." 98 N.Y.2d at 84. The Court emphasized "the literal language of the statute." *Id.* at 85; *see also id.* at 89 (Kaye, C.J., dissenting) ("The plainly stated limitations on what expenses the corporation must pay the director are that they be 'reasonable,' and 'actually and necessarily incurred.'"). Awarding Defendant's fees and expenses without determining what a New York court would consider to be reasonable attorney's fees would be out of step with *Baker II* and the "literal language" of BCL § 724(c).

Under the strict construction the Court of Appeals used in *Baker II*, the word "reasonable" in BCL § 724(c) should be given meaning, especially given the Legislature's determination that court-awarded fees under BCL § 724 may only be "to the extent authorized." BCL § 724(a). *See Hargett v. Town of Ticonderoga*, 31 Misc. 3d 443, 447 (N.Y. Sup. Ct. 2010) (quoting BCL § 724(a)) (noting that BCL § 724(a) contains "language of limitation" by only permitting the court to award indemnification "to the extent authorized").[12] The Court concludes that it would be inappropriate to grant Defendant's proposed fees *ipso facto* given the "express

---

[12] BCL § 724(a) reads:

Notwithstanding the failure of a corporation to provide indemnification, and despite any contrary resolution of the board or of the shareholders in the specific case under section 723 (Payment of indemnification other than by court award), indemnification shall be awarded by a court to the extent authorized under section 722 (Authorization for indemnification of directors and officers), and paragraph (a) of section 723.

guidance" in BCL § 724(c) that attorney's fees to be advanced must be "reasonable." *Diaz*, 57 A.D.3d at 830. For the foregoing reasons, the Court will calculate "reasonable" attorney's fees under BCL § 724(c) according to the analysis New York courts generally apply.

### The Relevant "Prevailing Hourly Rate"

Having decided that New York case law discussing attorney's fees generally applies, the Court moves to discussing the appropriate hourly rate. While New York courts do not employ the Second Circuit's forum rule as such, as discussed concerning documentation, they do require that rates reflect "the prevailing hourly rate of attorneys in the community with their experience." *RMP Cap. Corp*, 139 A.D.3d at 840 (finding that the trial court "properly reduced the hourly rates" of several attorneys "to reflect the prevailing hourly rate for the work performed in the community"); *see also Lancer Indem. Co.*, 127 A.D.3d at 1036 (courts should consider "the customary fee charged for similar services"); N.Y. Rule of Prof. Conduct r. 1.5(a)(3) (analysis of excessive fees is from the perspective of "the fee customarily charged in the locality for similar legal services."). Thus, New York case law appears to have an effect similar to the effect of the forum rule.

Of course, "locality" could refer to the locality in which services are rendered. Defendant's counsel assumes as much, stating in a supplemental declaration that a review of peer firms in New York City reveals that "(1) Hogan Lovells' standard rates for me and the associates staffed on the matter … before any discounts, are in-line with and, in fact, below the average for these peer firms, and (2) Hogan Lovells' discounted rates in this matter … are in-line with and, in fact, below the average

17

effective billed rates for these peer firms." (Def.'s Suppl. Decl. ¶ 3, ECF No. 49.) Some New York courts have defined this as the locality in which the Court sits. *See, e.g., Metro. Lofts of NY, LLC v. Metroeb Realty 1, LLC*, 46 Misc. 3d 1222(A), 17 N.Y.S.3d 383, 2015 WL 894869, at *9 (N.Y. Sup. Ct. 2015), *rev'd on other grounds*, 160 A.D.3d 637 (N.Y. App. Div. 2d Dep't 2018) ("[H]aving presided over the Commercial Division of Kings County Supreme Court for the past twelve years, I find the rates charged here to be comparable to those generally billed in commercial litigation in this Court.") (alteration added). In considering reasonable rates for out-of-county counsel, the trial court in *RMP Cap. Corp.* indicated that "the relevant community is Suffolk County, or by extension the Eastern District of New York. *RMP Cap., Corp. v. Victory Jet, LLC*, 40 Misc. 3d 1243(A), 2013 WL 5303582, at *8 (N.Y. Sup. Ct. Suffolk Cty. 2013), *aff'd as modified*, 139 A.D.3d 836 (N.Y. App. Div. 2d Dep't 2016). The Appellate Division affirmed: "the Supreme Court properly reduced the hourly rates submitted by the plaintiff for several of the attorneys … to reflect the prevailing hourly rate for the work performed in the community." *RMP Cap. Corp.*, 129 A.D.3d at 840. These cases are not entirely convincing—it appears that New York courts are not frequently presented with counsel from a different legal market.

In its discretion, the Court will look back to federal law. "According to the forum rule, courts should generally use the hourly rates employed in the district in which the reviewing court sits." *Simmons*, 575 F.3d at 174 (cleaned up); *Luciano v. Olten Corp.*, 109 F.3d 111, 115–16 (2d Cir. 1997)) ("It is well-established that the prevailing community the district court should consider is 'the district in which the court sits.") (cleaned up); *accord Orser v. Wholesale Fuel Distributors-CT, LLC*, 65

Misc. 3d 449, 451, 454 (Sup. Ct. 2018), *aff'd*, 173 A.D.3d 1519 (2019) (citing *Arbor Hill*, 522 F.3d at 190) (where plaintiff was entitled to "all reasonable attorney's fees," the court determined that it would apply the forum rule).

Courts can make exceptions to the forum rule where the service is one "a local attorney may not be willing or able to perform" since "[t]he complexity and specialized nature of a case may mean that no attorney, with the required skills, is available locally." *Simmons*, 575 F.3d at 176 (quoting *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768 (7th Cir.1982)) (alteration added). It must be "clear," however, "that a reasonable, paying[,] client would have paid those higher rates." *Id.* at 174 (alteration added).

Here, it is not clear that a reasonable, paying, client would have sought counsel from outside the Western District of New York. "The party seeking the award must make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result." *Simmons*, 575 F.3d at 176; *cf. Lancer Indem. Co.*, 127 A.D.3d at 1036 ("The attorney bears the burden of establishing the reasonable value of the services rendered, based upon a showing of the hours reasonably expended and the prevailing hourly rate for similar legal work in the community."). Defendant makes no effort in this regard, instead asserting simply that his counsel's fees are reasonable for New York City. (Def.'s Suppl. Decl. ¶ 3, ECF No. 49.) That Plaintiffs and Defendant, in the related state court matter, sought local counsel indicates that "[m]any attorneys practicing in [the area] could have ably handled this case … at much lower rates than those sought."

*Mikrut v. Unum Life Ins. Co.*, No. d:03cv1714(SRU), 2007 WL 2874801, at *4 (D. Conn. Sept. 28, 2007). Parties in similar Western District corporate law cases have made use of local counsel. *See, e.g., Pictometry Int'l Corp v. Air Am. Flight Ctr., LLC*, 394 F. Supp. 3d 320 (W.D.N.Y. 2019); *Ferrari Club of Am., Inc. v. Bourdage*, No. 6:12-CV-6530 (MAT), 2015 WL 4366209 (W.D.N.Y. July 15, 2015); *Indus. Tech. Ventures LP v. Pleasant T. Rowland Revocable Tr.*, No. 08-CV-6227T, 2015 WL 1924924 (W.D.N.Y. Apr. 28, 2015). Put bluntly, the Court is hesitant to force Plaintiffs to "pay for a limousine when a sedan could have done the job." *Simmons*, 575 F.3d at 177.

Further, it is not enough for Defendant to assert baldly that sometimes the Western District awards New York City rates. (Reply II at 4, ECF No. 48 (discussing *Robins & Myers, Inc. v. J.M. Huber Corp.*, No. 01-CV-00201S F, 2011 WL 1598973, at *3 (W.D.N.Y. Apr. 27, 2011).) There are few, if any, similarities between the BCL and sanctions that would suggest out-of-district rates should be applied here.

It is true, as Defendant asserts, that the Court may award out-of-district rates in the context of Fed. R. Civ. P. 37 to deter sanctionable conduct. (Reply II at 7, ECF No. 48 (citing *Ceglia*, 2012 WL 1574747, at *3).)[13] Defendant argues that "[l]ike under Rule 37, application of the 'forum rule' runs contrary to the purposes of the BCL's statutory advancement scheme." (Reply II at 4, ECF No. 48) Defendant posits that application of the forum rule (or something like it) would amount to frustrating the

---

[13] Moreover, *Ceglia* is distinguishable: that case dealt with "more than a 'garden variety' contract dispute" because it dealt with "the rightful ownership of Facebook, Inc." *New York v. Grand River Enterprises Six Nations, Ltd.*, No. 14-CV-910A(F), 2021 WL 4958653, at *3 (W.D.N.Y. Oct. 26, 2021). "In contrast, the nature of the instant action is not so rare as to justify out-of-district fees." *Id.* at *3.

New York Legislature's intent that the BCL "attract capable individuals into corporate service by easing the burden of litigation-related expenses." (*Id.* (quoting *Ficus Invs., Inc. v. Priv. Cap. Mgmt.*, 872 N.Y.S.2d 93, 99 (N.Y. App. Div. 1st Dep't 2009).) As discussed above, the Court of Appeals rejected a similar argument in *Baker II*, opting instead to apply a strict construction of the words "actually and necessarily incurred as a result of such action or proceeding." 98 N.Y.2d at 85 (rejecting corporate officer's argument for an expansive reading of the BCL, discussed *supra*); *see id.* at 91 (Kaye, C.J., dissenting) (quoting legislative history) (finding the majority's result "inconsistent" with "secur[ing] the continued service of competent and experienced people in senior corporate positions"). The Court of Appeals, while respecting the Legislature's intent that corporate officers should be given advancement, rejected the argument urging an expansive reading of advancement.

Accordingly, the Court finds that it is within its discretion to consider more heavily the prevailing market rates for attorneys in the District where it sits, rather than in New York City. However, the Court is mindful that this is but one factor among many.

**The Appropriate Hourly Rate**

Every other factor New York courts consider, except perhaps experience, favors Defendant's proposed fees. First, as the Court's own research concerning the issues surrounding advancement and "fees-on-fees" under BCL § 724(c) indicate, this case involves difficult and novel legal questions. *See RMP Cap. Corp.*, 139 A.D.3d at 839 (quoting *Diaz*, 57 A.D.3d at 830) ("In general, factors to be considered include '(1) the time and labor required, the difficulty of the questions involved, and the skill required

21

to handle the problems presented.'"); *see also Giblin v. Murphy*, 125 A.D.2d 884, 884 (N.Y. App. Div. 3d Dep't 1986) ("The case was intricate, requiring the ability and experience of a skillful counsel."). For example, the Court requested briefing on a novel issue concerning advancement of "fees-on-fees" under BCL § 724(c). The Court found Defendant's counsel's research on that motion, and generally, to reflect a high level of "experience, ability, and reputation." *RMP Cap. Corp.*, 139 A.D.3d at 839.

In "complex" cases, the Western District has awarded between $250 and $375 per hour. *See Godson*, 328 F.R.D. at 62 (attorney with "extensive experience" awarded $350 per hour). More recently, the District has found that "$500 is in-line with hourly rates for attorneys" who have "more than 20 years of experience." *New York v. Grand River Enterprises Six Nations, Ltd.*, No. 14-CV-910A(F), 2021 WL 4958653, at *4 (W.D.N.Y. Oct. 26, 2021). While Mr. Philp has approximately 17 years of experience,[14] (Application I ¶ 5, ECF No. 23), the Court finds that an upward adjustment in his reasonable hourly rate to $500 is appropriate for the reasons stated above. Additionally, the Court notes Mr. Philp's expertise in corporate law. (*Id.* Ex. A, ECF No. 23-1.)

For the associate attorneys and law clerks that Defendant used in this matter, the Court notes that neither Application I nor Application II contain "evidence of

---

[14] The Court should distinguish another recent case in which it awarded an attorney with 17 years' of experience only an hourly rate of $300. Unlike this case, which presents novel issues around BCL § 724 and is governed by New York law, the case this Court decided previously and awarded the lesser hourly-rate involved on-point precedent for Title VII cases and concerned routine discovery disputes that led to sanctions. *See id.* at *7. Put differently, $300 per hour was commensurate "with those prevailing in the community for similar services," *i.e.* employment law cases, "by lawyers of reasonably comparable skill, experience, and reputation." *Schneider*, 2021 WL 5042502, at *3 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.1 (1984)).

[their] training, background[,] and skill." *Matakov*, 84 A.D.3d at 678 (alterations added). Rather than delay decision in this matter further, the Court will exercise its discretion to apply a typical rate for associates in this District.[15] *See Godson*, 328 F.R.D. at 62 (determining hourly rates for attorneys who did not submit declarations indicating their experience). The Court finds a $200 per hour rate appropriate. *See Grand River Enterprises*, 2021 WL 4958653, at *4 (finding a $200 per hour rate reasonable in the Western District for newer attorneys); *see also Wright*, 2020 WL 289156, at *2 ($250 per hour is an appropriate hourly rate for associate attorney with six or seven years of experience).

### Reasonable Hours Billed

New York courts will reduce attorney fee awards where counsel spends "an extraordinary amount of time researching and reviewing the file," *Hinman v. Jay's Vill. Chevrolet, Inc.*, 239 A.D.3d 748, 749 (N.Y. App. Div. 3d Dep't 1997), or where counsel does not establish that he "needed to spend" the amount of time he did on the case. *Diaz*, 57 A.D.3d at 831. Courts may assess "across-the-board" reductions where a party "use[s] block billing, including vague and nonspecific billing entries." *RMP Cap. Corp.*, 139 A.D.3d at 840. Likewise, federal courts consider "the reasonableness of the hours spent on litigation … mak[ing] a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Godson*, 328 F.R.D. 62–63 (citation omitted) (alteration

---

[15] Should Defendant believe that the Court's assessed rate is insufficient for Monroe County or the Western District, the Court grants Defendant leave to supplement his submissions.

added). For the reasons stated below, the Court will assess a 10% reduction of hours billed concerning Application I but declines to do so for Application II. *See Schneider*, 2021 WL 5042502, at *3 (quoting *Kirsch*, 148 F.3d at 173) (courts may reduce hours billed where they are "redundant, or otherwise unnecessary").

### *Application I*

While Application I contains many entries, and those entries specify the day and amount of time to the sixth minute, numerous entries lack meaningful detail. For example, in Application I, Defendant's counsel includes "[d]raft portions of memorandum of law in support of motion for reimbursement and advancement" without stating if, for example, counsel was preparing the analysis section, the preliminary statement, etc. Entering the same activity description over-and-over essentially amounts to block-billing. *See Cmty. Counseling & Mediation Servs. v. Chera*, 115 A.D.3d 589, 590 (N.Y. App. Div. 1st Dep't 2014) (applying 10% reduction to "block-billed fees … to account for unnecessary work"). Application I also contains a law clerk's entries. Several such entries do not indicate "legal work," and instead simply involve the law clerk discussing discovery or becoming familiar with the case. *See Silverstein v.* Goodman, 113 A.D.3d 539, 540 (N.Y. App. Div. 1st Dep't 2014) (noting that a special referee "awarded no fees for [an] associate who did no legal work").

For the foregoing reasons, the Court will assess an across-the-board reduction of 10% for hours billed in Application I. *RMP Cap. Corp.*, 139 A.D.3d at 840 (finding trial court's "across-the-board 25% reduction in the hours expended" for similar deficiencies "was a provident exercise of discretion"); *accord Schneider*, 2021

WL 5042502, at *3 (quoting *Kirsch*, 148 F.3d at 173) (The Court may exercise its discretion "to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fact from a fee application."). This is appropriate where, as here, "entries on a time sheet are vague or duplicative or otherwise insufficient." *Martinez*, 330 F.R.D. at 72 (quoting *T.S. Haulers, Inc. v. Cardinale*, No. 09 CV 451, 2011 WL 344759, at *3 (E.D.N.Y. Jan. 31, 2011)).

### *Application II*

In contrast, Application II, especially concerning associate attorney entries, contains a suitable level of detail. Plaintiffs complain that "Associate Daniel Petrokas, Esq.[,] spent 48.3 hours drafting an outline and ultimately a brief opposing the stay motion." (Objection II at 7, ECF No. 47.) The Court's concern with block-billing is ameliorated, however, because Mr. Petrokas' entries, and the entries at large, delineate what activity counsel was performing. For example, Mr. Petrokas indicated when he was researching "Second Circuit case law regarding [the] Colorado River doctrine." When he started the assignment, Mr. Petrokas indicated he was drafting an "outline" for "opposition to [the] motion to stay." The time entries also indicate time spent cite checking the same opposition. Thus, the Court concludes concerning Application II that Defendant's attorneys "performed appropriate and necessary work." *Casper v. Cushman & Wakefield*, 88 A.D.3d 556, 556 (N.Y. App. Div. 1st Dep't 2011).

**DISCUSSION OF FORFEITURE OF THE FEES ON FEES ARGUMENT**

"The discretion trial courts may exercise on matters of procedure extends to a decision on whether an argument has been waived."[16] *Brown v. City of New York*, 862 F.3d 182, 187 (2d Cir. 2017) (noting that appellate review is for abuse of discretion). The weight of authority in the Second Circuit and in New York courts suggests that Plaintiffs forfeited their argument concerning *Baker II:* Plaintiffs failed to raise *Baker II* in their initial objections to Defendant's advancement applications. *See, e.g., Harrison v. Republic of Sudan*, 838 F.3d 86, 96 (2d Cir. 2016) (argument waived when first raised in reply papers at trial level); *Chevron Corp. v. Donziger*, 325 F. Supp. 3d 371, 379 n.21 (S.D.N.Y. 2018) (same); *Fisher v. Kanas*, 487 F. Supp. 2d 270, 278 (E.D.N.Y. 2007) (same); *accord State Farm Fire & Cas. Co. v. LiMauro*, 103 A.D.2d 514 (N.Y. App. Div. 2d Dep't 1984), *aff'd*, 65 N.Y.2d 369 (1985) ("It is beyond cavil that raising a new substantive issue of law for the first time in a reply brief is improper.").

Although the weight of authority is clear, the Court is careful to note that this case law may rest on the concern for a lack of "notice" that the opposing party would make the argument it did. *Howard v. Cannon Indus., Inc.*, 2012 WL 5373458, at *4 n.4 (W.D.N.Y. Oct. 30, 2012); (Pls.' Mem. of Law on Forfeiture at 4–5, May 2, 2022, ECF No. 63 ("At most, the additional briefing caused a minimal delay—a small price to pay for arriving at the right answer and following New York law.").) Trial courts, as here, may obviate any lack of notice by providing the "parties with an

---

[16] *See supra* note 7 (discussing use of the term "waiver" versus use of the term "forfeiture").

adequate opportunity to respond to particular arguments by ordering additional briefing or an extra round of oral argument." *Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 418 (2d Cir. 2001). This is because there is no analogous trial-level rule to Fed. R. App. P. 28(a), which indicates that "courts of appeals generally do not consider arguments raised for the first time in reply." *Id*.

Even if the Second Circuit is "skeptical of this analogy" for forfeiture, district courts are well within their discretion to find that "new arguments raised in successive briefing papers will not be considered where those arguments could have been raised in a previous submission." *Sharp v. Ally Fin., Inc.*, 328 F. Supp. 3d 81, 105 (W.D.N.Y. 2018) (collecting cases). Similarly, district courts "will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate [judge] but were not." *Hubbard v. Kelley*, 752 F. Supp. 2d 311, 312–13 (W.D.N.Y. 2009). This is because "[o]rderly disposition of cases requires parties not unduly delay in seeking relief." *Scott-Iverson v. Indep. Health Ass'n, Inc.*, No. 13-CV-451V(F), 2017 WL 3498283, at *2 (W.D.N.Y. Aug. 16, 2017) (alteration added). Given the danger of self-help stays and gamesmanship, courts may deem arguments forfeited especially where, as here, the party does not explain its delay. *See id*. (determining that the court would not credit an explanation for delay that "bordered on the disingenuous"); *see also* Fed. R. Civ. P. 1 (The Federal Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.")

Plaintiffs argue that they raised the fees-on-fees issue in their initial objection. (Pls.' Mem. of Law on Forfeiture at 2, ECF No. 63.) Plaintiffs stated in Objection I:

> More than half of the time billed by Defendant's counsel in this matter relates to its motion for advancement of fees. The time entries that mention the motion for advancement add up to 139.3 hours … That tally omits time clearly spent on the motion for advancement which do not specifically mention it by name. Presumably the motion for advancement involved time spent researching the theory, although the concept was mentioned in the very first time-entry on this matter.… It also involved correspondence to Plaintiffs' counsel demanding advancement before filing the motion, time spent drafting the motion and a reply brief, as well as compiling the instant fee application. That work should not have required 139.3 hours of attorney time.

(Objection I at 5, ECF No. 25.) Any treatment of *Baker II* or fees-on-fees in the objection is so vague and perfunctory that the Court need not consider it. *See Schlosser v. Kwak*, 16 F.4th 1078, 1080 (2d Cir. 2021) (vague references to arguments insufficient "to preserve an argument for appeal"); *accord Great Lakes Ins. SE v. Sunset Watersports, Inc.*, --- F. Supp. 3d --- (S.D. Fla. 2021), *appeal dismissed*, No. 21-14270-DD, 2022 WL 758020 (11th Cir. Feb. 17, 2022) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.").

For the foregoing reasons, the Court finds that Plaintiffs forfeited their argument based on *Baker II* concerning Applications I & II.

## ORDER ON FUTURE ADVANCEMENTS

After reviewing the sample orders from the Delaware Court of Chancery that Defendant's counsel attached to his supplemental declaration, (Dec. 20, 2021,

ECF No. 49), the Court orders the parties to adhere to the following terms for future advancements. The Court warns the parties that unnecessary objections and unreasonable fees may result in the Court imposing monetary sanctions or more serious penalties for failure to comply with this order. Fed. R. Civ. P. 37.[17] The Court will not tolerate delay or obfuscation in paying advancement fees. Accordingly, it is hereby

ORDERED that:

1.     Starting in July 2022, before the 10th calendar day of each month, Defendant's counsel will submit an advancement demand for fees and expenses incurred during the previous month. Any fees or expenses not included in the demand are deemed forfeited. The advancement demand will include the following:

1.1   A detailed invoice identifying the fees and expenses for which advancement is requested. The invoice shall provide for each time entry the date, timekeeper, billing rate, task description, time incurred, and amount charged. The invoice shall identify with detail for each expense the date of the charge, its nature, and the amount incurred.

1.2     A certification signed by the partner handling the case attesting that:

1.2.1   He or she personally reviewed the invoice; and,

1.2.2   Each time entry and expense falls within the scope of Defendant's advancement rights; and,

---

[17] This Decision and Order is not designed to address reasonable attorney fees in the event of an award of sanctions.

1.2.3  In his or her professional judgment, the fees and expenses charged are reasonable considering this Court's D. & O., New York Rule of Professional Conduct 1.5(a), and all applicable law; and,

1.2.4  The services rendered were thought prudent and appropriate in his or her good faith professional judgment.[18]

2.      Beginning in July 2022, before the 20th calendar day of the month, Plaintiffs' counsel will respond to the advancement demand in writing. The response shall identify each specific time entry or expense to which Plaintiffs object and explain the nature of that objection. Failure to specify the time entries in dispute will deem any objection thereto forfeited. The response shall cite any legal authority on which Plaintiffs rely. Any objection not included in the response is deemed forfeited. The partner handling this case will certify that:

2.1     He or she personally reviewed the advancement demand; and

2.2     In his or her professional judgment, the disputed fees and expenses are not reasonable or otherwise fall outside the scope of the advancement right.

3.      Plaintiffs shall pay the undisputed amount contemporaneously with the response. If Plaintiffs dispute more than 50% of the amount sought in any advancement demand, Plaintiffs shall pay 50% of the amount sought and Defendant's counsel shall hold the amount that exceeds the undisputed amount in its escrow account pending resolution of the dispute regarding such portion.

---

[18] Fed. R. Civ. P. 11(b) lists the representations counsel make when presenting a signed paper to the Court.

4.   Before the 25th calendar day of each month, Defendant's counsel shall reply to the advancement response in writing and provide supporting information and authority.

5.   Before the last calendar day of each month, the partners handling this case for each side will meet and confer regarding any disputed amounts. Failure of the parties to meet and confer may result in sanctions by the Court for failure to follow its order. Fed. R. Civ. P. 37.

6.   Not more frequently than once every three months from the first day in July 2022, Defendant may file an application seeking the Court's ruling on the disputed amounts. Briefing shall begin with Defendant filing a motion and shall proceed in accordance with the timing set forth in Loc. R. Civ. P. 7. No new arguments may be raised in the motion and subsequent briefings. The parties shall only cite authorities identified in writing in the applicable demand, response, or reply.

7.   If the Court grants the application in whole or part, then pre-judgment interest is due on the adjudicated amount from the date of the applicable advancement demand.

## CONCLUSION

For the foregoing reasons, the Court awards a reduced rate of $500 per hour for Ryan M. Philp, Esq., and $200 per hour for associate and law clerk time entries. The Court reduces the attorneys' hours for Application I by 10%. The Court finds that Defendant should be awarded $58,639 in attorney's fees for Application I. The Court finds that no across-the-board reduction is necessary for Application II and the clerk is directed to enter a judgment for $51,130 for Application II.

*Cost Break Down*

Using the invoices for Application I (ECF No. 23, Exhibits B-G) and Application II (ECF No. 43 Exhibits A-E) the Court determines the following:

With regards to **Application I**:

In invoice **Exhibit B**, Mr. Philp has logged 23.5 hours, and Mr. Moore has logged 35.9 hours. Ten percent of 23.5 is 2.35 and subtracting that from 23.5 leaves 21.15 hours. Mr. Philp is permitted an hourly rate of $500, multiplied by 21.15 hours equals a fee of $10,575.

Mr. Moore's hours, 35.9, are also reduced by ten percent (3.59), and thus total 32.31 hours. Mr. Moore is permitted an hourly rate of $200, multiplied by 32.31 hours equals a fee of $6,462.

In invoice **Exhibit C**, Mr. Philp logged 21.2 hours and Mr. Moore logged 46.1 hours. Ten percent of 21.2 is 2.12 and subtracting that from 21.2 is 19.08. Multiplying Mr. Philp's permitted hourly rate of $500 by 19.08 results in a fee of $9,540.

Mr. Moore's 46.1 hours minus 10 percent (4.61) is 41.49 hours. Multiplied by the permitted hourly rate of $200 equates to is $8,298.

In the invoice for **Exhibit D**, Mr. Philp logged 8.2 hours and Mr. Moore logged 22.3. Ten percent of 8.2 is 0.82. Subtracting that from 8.2, the result is 7.38 hours, which multiplied by $500 is $3,690.

Mr. Moore's 22.3 hours, minus 10 percent is 20.07, multiplied by $200 is $4,014.

In the invoice for **Exhibit E**, Philp logged 11.3 hours and 23.9 hours was logged by Mr. Moore. Ten percent of 11.3 is 1.13, and subtracting that from the hour total the result is 10.17. Multiplying this by the hourly rate of $500 results in $5,085 for Mr. Philp.

Mr. Moore logged 23.9 hours, minus 2.39, leaving 21.51 hours. Multiplying by the hourly rate of $200, Mr. Moore's fee is $4,302.

In the invoice for **Exhibit F**, Mr. Philp logged 0.4 hours, and Mr. Moore logged 1.40. Subtracting ten percent from 0.4 is 0.36. Multiplying the hourly rate of $500 is $180 for Mr. Philp. Mr. Moore's fee is 1.40 hours minus 0.14, ten percent of the hours billed, times $200, the cost per hour, resulting in $252.

Finally, with regard to the invoice for **Exhibit G**, Mr. Philp worked 6.8 hours, Mr. Moore worked 10.20 hours, and Mr. Shaked, a law clerk, worked 7.50 hours. Mr. Philp's hours, minus ten percent, is 6.11. Multiplying by his rate of $500, produces his total of $3,055.

Mr. Moore's rate of 10.20 hour minus ten percent is 9.18. Multiplying his adjusted rate of $200, is $1,836.

Mr. Shaked's hourly rate is reduced to $200, as stated above for all associates and law clerks; his hours reduced by ten percent is 6.75. Multiplied by 200, his total amounts to $1,350.

***The total amount to be paid out from Application I is***:

Mr. Shaked:............. $1,350.00

Mr. Moore:............... $25,164.00

Mr. Philp: ................ $32,125.00

TOTAL..................... **$58,639**.00

Regarding **Application II**:

The Court did not assess a need for any across-the-board decrease. Thus, it will apply the permitted hourly rate to the hours submitted by Defendant.

**Exhibit A** is an invoice for **$14,350**, broken down as follows:

Mr. Philp worked 16.30 hours, multiplied by his rate of $500, awarding him $8,150.

Mr. Moore worked for 22.5 hours, multiplied by $200 an hour results in $4,500.

Mr. Petrokas, who has taken over for Mr. Moore (ECF No 43-1 ¶ 4.) would fall in the same hourly rate of $200. He worked 4.90 hours for a total of $980.

Mr. Shaked worked for 3.60 hours, which multiplied by the hourly rate of $200 is $720.

**Exhibit B** is an invoice for **$9,520**, broken down as follows:

Mr. Philp worked for 11.4 hours, and at a rate of $500 an hour, his fee is $5,700.

Mr. Petrokas worked for 15.40 hours, and at a rate of $200 an hour, his fee is $3,080.

Mr. Shaked worked for 2.2 hours, and at a rate of $200 an hour, his fee is $440.

Mr. Parashar worked for 1.5 hours at a rate of $200 an hour, his fee is $300.

**Exhibit C** is an invoice of **$8,490**, broken down as follows:

Mr. Philp worked for 6.30 hours at a rate of $500 an hour, for a total of $3,150.

Mr. Petrokas worked for 8.60 hours a rate of $200 an hour, for a total of $1,720.

Mr. Shaked worked for 3.10 hours for a rate of $200  an hour for a total of $620.

Ms. Bolivar worked for 40 hours at a rate of $75 an hour for total $3,000.[19]

**Exhibit D** is an invoice for **$15,940**, broken down as follows:

Mr. Philp worked for 10 hours at a rate of $500 an hour for a total of $5,000.

Mr. Petrokas worked for 50.30 hours at a rate of $200 an hour for a total of $10,060.

Ms. Longo worked 2.90 hours at a rate of $200 an hour for a total of $580.

Mr. Parashar worked 1.5 hours at a rate of $200 an hour for a total of $300.

**Exhibit E** is an invoice for **$2,830**, broken down as follows:

Mr. Philp worked for 4.30 hours at a rate of $500 an hour for a total of $2,150.

Mr. Petrokas worked for 3.40 hours at a rate of $200 an hour for a total of $680.

***The total amount to be paid out from Application II is:***

Ms. Longo: ............... $580.00

Mr. Parashar: .......... $600.00

---

[19] Counsel did not litigate over the hourly rate charged by administrative staff such as Ms. Bolivar. Thus, the Court has not reduced the hourly rate requested in her case.

Mr. Shaked:............. $1,780.00

Ms. Bolivar:............. $3,000.00

Mr. Moore:............... $4,500.00

Mr. Petrokas: .......... $16,520.00

Mr. Philp: ............... $24,150.00

TOTAL..................... **$51,130.00**

Thus, the total amount of the fees due to Defendant for Applications I and II is **$109,769.00**.

## ORDER

The Clerk is directed to enter judgment in the amount of $109,769.00 in favor of Defendant. The parties are directed to comply with the Order on Future Advancements, as noted above.

SO ORDERED.

DATED:      June 21, 2022
              Rochester, New York          MARK W. PEDERSEN
                                 United States Magistrate Judge